UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EMILE HERIVEAUX and CHITA
ALIPERIO,

    Plaintiffs,

v.

DURKIN & DURKIN LLC, M. MURPHY
DURKIN, individually and as an
agent of Durkin & Durkin LLC, and
KEARNY BANK, f/k/a KEARNY
FEDERAL SAVINGS BANK

    Defendants.

Civ. No. 18-13148 (KM) (MAH)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

*Pro se* plaintiffs Emile Heriveaux and Chita Aliperio sued several entities in connection with a foreclosure proceeding on their property. Plaintiffs allege that while carrying out the foreclosure Defendants violated several state and federal laws, including the federal Fair Debt Collection Practices Act ("FDCPA"). Defendants, with leave of the Magistrate Judge assigned to the case, move for summary judgment. (DE 24).[1] For the following reasons, the motion is **GRANTED**.

### I. BACKGROUND[2]

#### A. The Parties

Plaintiffs Emile Heriveaux and Chita Aliperio, husband and wife, own the property that is the subject of this dispute. (DE 1 at 5–7). Defendant Kearny

---

[1]     "DE ___" refers to the docket entry number in this case.

[2]     The events described in this opinion are drawn from the statement of undisputed material facts that Defendants submitted pursuant to L. Civ. R. 56.1. (DE 24-1). Plaintiffs have neither addressed nor rebutted Defendants' characterization of the facts, but Defendants have provided primary sources that adequately support the allegations in their motion papers. (*See* DE 24-3).

Bank, formerly known as Kearny Federal Savings Bank,[3] held the note and mortgage on Plaintiffs' property and initiated foreclosure proceedings after Plaintiffs defaulted. (DE 1 at 12 & 21–23). Kearny hired defendant law firm Durkin & Durkin LLC and its managing member, M. Murphy Durkin, to carry out the foreclosure.[4] (DE 1 at 9–11 & 21–23).

### B. The Note and Mortgage

On March 12, 2007, Aliperio took out a $650,000 refinance loan from Fairmont Funding Ltd. That loan was evidenced by a promissory note. To secure payment on the note, Aliperio and Heriveaux executed a mortgage on their property to Fairmont's nominee, Mortgage Electronic Registration System, Inc. ("MERS"). The mortgaged property is located at 259 Forest Avenue in Paramus, New Jersey. The parties recorded the mortgage on March 22, 2007 in the Bergen County Clerk's office, on page 722 of book 16639.

The note obligated Aliperio to make monthly payments of $4,108.44 on the first of each month, beginning in May 2007. The unpaid principal initially incurred a rate of interest of 6.5% annually. The note called for any unpaid amounts to be due in full on April 1, 2037. The note provided a late charge of 5% for any payment not received within fifteen days of the due date. It also provided that if the borrowers defaulted by failing to pay a monthly payment in full, the lender could require full payment the remaining principal balance.

The note also provided that the lender could at any time transfer the note and mortgage without notice to the borrower, and that the lender, or any transferee of the note entitled to receive payments under the note, would be deemed the noteholder.

Over the next several years, the loan was serviced by an entity first known as Countrywide Home Loans Servicing LP ("Countrywide") and later as BAC Home Loans Servicing LP ("BAC Servicing"). Then, as the result of a merger, the servicer of the loan became Bank of America, N.A. ("BOA").

---

[3]   I will refer to this party as "Kearny."

[4]   For clarity, I will refer to the firm as "Durkin" and the individual as "Murphy."

2

### C. The Invalid Assignments

It appears to be admitted that, several times over the next few years, clerical errors caused the mortgage to be incorrectly assigned. These invalid assignments form the basis of Plaintiffs' lawsuit. After the errors were discovered, the invalid assignments were cured.

On July 25, 2007, MERS incorrectly assigned the mortgage to Kearny (the "first invalid assignment"). The first invalid assignment was recorded on October 30, 2009 in the Bergen County Clerk's office, on page 914 of book 280. At that time, no nominee relationship (with respect to the note and mortgage in question) existed between Countrywide and MERS.

On October 25, 2011, MERS assigned the mortgage to BOA, the successor-by-merger to BAC Servicing—the entity formerly called Countrywide (the "second invalid assignment"). The second invalid assignment was recorded on November 28, 2011 in the Bergen County Clerk's office, on page 2042 of book 883. The second invalid assignment did not identify MERS as Fairmont's nominee.

On February 28, 2013, BOA assigned the mortgage (the "third invalid assignment") to Kearny. The third invalid assignment was recorded on March 28, 2013 in the Bergen County Clerk's office, on page 988 of book 1337.

### D. The Corrective Assignments

On March 19, 2013, MERS cured the error through a corrective assignment to BOA ("first valid assignment"). The first valid assignment was recorded on April 12, 2013, in the Bergen County Clerk's office, on page 1044 of book 1354.

On July 19, 2013, BOA assigned the mortgage to Kearny (the "second valid assignment"). The second valid assignment was recorded on August 13, 2013 in the Bergen County Clerk's office, on page 2183 of book 1484.

At all relevant times, Kearny had the original note in its possession.

### E. The Default and Foreclosure

On July 1, 2011, Plaintiffs defaulted by failing to make payments under the note and mortgage. Since the default, Plaintiffs have paid neither property taxes nor insurance premiums. To protect its interest in the property, Kearny has incurred over $120,000 in costs for both.

On January 16, 2016, pursuant to the New Jersey Fair Foreclosure Act, Kearny notified Plaintiffs of its intent to foreclose on the property. On July 25, 2018, Kearny served a second notice of its intent to foreclose.

### F. Previous Litigation

Heriveaux and Aliperio have for years contested Kearny's rights under the note and mortgage. Both federal and state courts have rejected their arguments.

#### 1. State Foreclosure Proceedings[5]

On March 14, 2014, Kearny Bank filed a foreclosure complaint in the Chancery Division of the New Jersey Superior Court. On March 28, 2018, a notice of *lis pendens* was recorded on the Forest Avenue property. Heriveaux and Aliperio, appearing *pro se*, answered that the several mortgage assignments were invalid. Heriveaux and Aliperio counterclaimed, alleging that Kearny had used the invalid assignments to steal more than $250,000 from them. Kearny moved to dismiss the counterclaims, and Heriveaux and Aliperio moved for summary judgment.

On July 21, 2014, the Hon. Peter E. Doyne, A.J.S.C., dismissed the counterclaims with prejudice for failure to state a claim and denied Plaintiffs' motion for summary judgment. On October 10, Judge Doyne denied the motion for reconsideration.

Discovery ensued, and Kearny moved for summary judgment. Heriveaux and Aliperio again cross-moved for summary judgment. On December 22, 2014, Judge Doyne denied Plaintiffs' cross-motion and granted Kearny's

---

[5] (DE 24-4 at 33–54).

4

motion for summary judgment. Judge Doyne ordered that default be entered against Heriveaux and Aliperio and remanded the case to the foreclosure unit for final judgment.

Judge Doyne noted that the note and mortgage had been invalidly transferred several times but ruled that both had been validly transferred to Kearny through corrective assignments and recordings. Because Kearny had demonstrated a *prima facie* right to foreclose and because Heriveaux and Aliperio had failed to contest the validity of the mortgage or create an issue concerning Kearny's right to foreclose, Judge Doyne determined that the foreclosure proceeding was appropriate.

After the case returned to the foreclosure unit, Kearny, despite the favorable summary judgment decision, moved to voluntarily dismiss the action.

### 2. The First Federal Court Litigation[6]

On February 23, 2016, Heriveaux and Aliperio sued in federal court under the caption *Aliperio v. Bank of America*, No. 16-1008 (D.N.J.). The allegations in that lawsuit resembled the ones here but centered around a RICO claim. I summarized those earlier allegations as follows.

- None of the defendants ever held legal or equitable title to Plaintiffs' mortgage.

- Defendants engaged in several fraudulent assignments of the mortgage, giving rise to "unlawful transfer[s] of $650,000.00 interest in Plaintiffs' immovable property."

- Countrywide [] sold residential mortgage loans to residential mortgage backed securitization trusts without transferring the original promissory notes to the trusts. [BOA] profited to the tune of $2,125,500 when Plaintiff's loan defaulted.

- Kearny never properly held or owned the promissory note and lied about this in the State action by holding itself out as the proper owner. [BOA] also made misrepresentations to this effect

---

6   (DE 24-4 at 4–31).

5

in its [notices of intent to foreclose (NOIs)] and state court filings.

- Judge Doyne's opinions in the State action contained legal errors and indicia of bias against Plaintiffs.

- The defendants committed robbery when they invalidly transferred Plaintiffs' mortgage.

- The defendants committed mail fraud when they sent monthly loan statements requesting payment and NOIs to Plaintiffs, and collected a sum of $2,399,277.31 [an apparent reference to profits on Credit Default Swap ("CDS") investment vehicles] using multiple copies of Plaintiffs' mortgage.

- [BOA] unlawfully resumed sending monthly loan statements to Plaintiffs after the State action was dismissed and the *lis pendens* discharged, including nine fraudulent and threatening statements from February 4, 2015, through October 16, 2015.

[*Aliperio v. Bank of America*, No. 16-1008 (DE 25 at 5-6 (citations omitted))].

On December 13, 2016, I dismissed the complaint without prejudice to the filing of an amended complaint. Plaintiffs did not avail themselves of that option, and immediately appealed the dismissal to the Third Circuit.

On August 24, 2018—while the earlier appeal was pending—Heriveaux and Aliperio filed this lawsuit. On February 26, 2019 the Third Circuit affirmed my dismissal of the *Bank of America* litigation.[7] (DE 24-4 at 56–62).

## II. DISCUSSION

Plaintiffs' core theory appears to be that because the note and mortgage were formerly improperly assigned, foreclosure cannot occur. Plaintiffs do not allege that they have overpaid or that they were not credited for the payments they made. They also do not allege that any entity besides Kearny ever tried to institute foreclosure proceedings. Plaintiffs do not contest that they have defaulted and have failed to insure the property or pay taxes on it.

---

[7] While this motion was pending, Plaintiffs filed with the Federal Deposit Insurance Corporation ("FDIC") a complaint raising claims similar to those presented in this lawsuit. (DE 30 at 5-10).

6

## A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Nw. Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no

7

genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

If a party fails to address the other party's properly supported motion for summary judgment, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, No. 08-3975, 2010 U.S. Dist. LEXIS 67320, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (*quoting Anchorage Assocs.*, 922 F.2d at 175)).

### B. Substantive Law

Plaintiffs seek relief from Defendants on the following theories:

- Count One: Conspiracy to violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Kearny, Durkin, and Murphy);
- Count Two: Violation of the FDCPA, 15 U.S.C. § 1692 *et seq.* (Durkin and Murphy);
- Count Three: Robbery, conversion, and unjust enrichment (Kearny); and

8

- Count Four: Declaratory judgment that the mortgage is unenforceable (Kearny).

(DE 1). In opposing Defendants' motion for summary judgment, Plaintiffs propose three theories why Kearny is not entitled to foreclose on the property: 1) the note is "split" between Kearny and BOA; 2) Kearny does not explain when and how it received the note; 3) discovery was stayed for ninety days on July 8, 2019. (DE 29-1).

### 1. Counts One and Two (FDCPA)

Plaintiffs' FDCPA claims are predicated on the assertion that Kearny knew it was not entitled to enforce the note under the unsubstantiated theory that Kearny was not the proper noteholder. Plaintiffs also insist that Durkin and Murphy knew that this was the case and that they conceded that they and Kearny had stolen other property from Plaintiffs.

Instead, the record reveals that Kearny at all relevant times held title to the note. Moreover, there is no evidence of Defendants' wrongdoing (and also no evidence of Defendants' alleged *concession* of wrongdoing).

#### i. FDCPA

To state a claim under the FDCPA, a plaintiff must allege that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005); *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 597 (E.D. Pa. 2014).

The alleged violation of the FDCPA here consists of the use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see also id.* § 1692e(10).

In misleading-representation cases, like this one, courts routinely apply the "least sophisticated debtor" standard when "analyz[ing] the communication giving rise to the FDCPA claim." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168,

9

174 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). As the Third Circuit explained in *Jensen v. Pressler & Pressler*:

> Although the least sophisticated debtor standard is "lower than the standard of a reasonable debtor," it "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir.2000)). In so doing, it "give[s] effect to the Act's intent to 'protect[] the gullible as well as the shrewd.'" *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir.2008) (second alteration in original) (quoting *Brown*, 464 F.3d at 453).
>
> The standard is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be. *See Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir.2014) ("[T]he FDCPA does not require that a plaintiff actually be confused."); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993) ("We apply an objective test based on the understanding of the 'least sophisticated consumer' in determining whether a collection letter violates section 1692e."). Thus, "the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

791 F.3d 413, 418–19 (3d Cir. 2015).

Section 1692e contains an additional materiality requirement, but it "is simply a corollary of the well-established 'least sophisticated debtor' standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). "[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." *Id.* at 420–21. That is not a high bar. "[T]he materiality requirement, correctly applied, effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." *Id.* at 422.

### ii. Enforcement of the Note and Mortgage

Mortgages on real estate in New Jersey, including all of their stipulations and covenants, are "assignable at law by writing, whether sealed or not, and any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name . . . ." N.J. Stat. Ann. § 46:9-9. Still, "[a]s a general proposition, a party seeking to foreclose a mortgage must own or control the underlying debt." *Wells Fargo Bank, N.A. v. Ford*, 418 N.J. Super. 592, 597 (App. Div. 2011) (quoting *Bank of N.Y. v. Raftogianis*, 418 N.J. Super. 323, 327–28 (Ch. Div. 2010)). Ownership or control of the underlying debt equates to the ability to enforce the underlying note. New Jersey's version of the Uniform Commercial Code (the "NJUCC") governs the transfer of negotiable instruments, including mortgages, and thus determines whether the defendants can enforce the note. *HSBC USA, N.A. v. Dennis*, No. A-5522-14T2, 2017 N.J. Super. Unpub. LEXIS 342, 2017 WL 541463 at *5 (App. Div. Feb. 9, 2017) (citing N.J.S.A. 12A:3-104).

> There are three categories of persons entitled to enforce negotiable instruments: (1) "the holder of the instrument," (2) "a nonholder in possession of the instrument who has the rights of a holder," or (3) "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [N.J.S.A. 12A:3-309 ] or [N.J.S.A. 12A:3-418 ]." N.J.S.A. 12A:3-301. *See [Deutsche Bank Natl. Trust Co. v.] Mitchell, supra*, 422 N.J. Super, at 222–23. Under category one, the statute provides "that for a person other than the one to whom a negotiable instrument is made payable to become a 'holder,' there must be a 'negotiation[.]'" *Mitchell, supra*, 422 N.J. Super [214,] 223 (App. Div. 2011) (quoting *Ford, supra*, 418 N.J. Super, at 598 .

*Id.*; N.J. Stat. Ann. § 12A:3-301; *see also In re Sia*, No. 15-1366, 2015 U.S. Dist. LEXIS 172126, 2015 WL 9462089 at *10 (D.N.J. Dec. 28, 2015); *U.S. Bank Nat'l Ass'n v. Paragon 150 Pierce St, L.L.C.*, No. 09-5717, 2012 U.S. Dist. LEXIS 197359, 2012 WL 12904679 at *5 (D.N.J. Oct. 19, 2012); *Ford*, 418 N.J. Super, at 597–99; *Raftogianis*, 418 N.J. Super. at 331–32.

> Where, as here, the ownership of an instrument is transferred, the transferee's attainment of the status of "holder" depends on the

11

> negotiation of the instrument to the transferee. *In re Kemp*, 440
> B.R. 624, 630 (Bankr. D.N.J. 2010) (citing N.J.S.A. 12A:3-201(a)).
> The two elements required for negotiation are the transfer of
> possession of the instrument to the transferee, and its indorsement
> by the holder. *Id.* (citing N.J.S.A. 12A:3-201(b)).

*In re Sia*, 2015 U.S. Dist. LEXIS 172126 2015 WL 9462089 at *10.

If a negotiable instrument is "indorsed in blank, [it] becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." N.J. Stat, Ann. § 12A:3-205 (b); *see also Potoczny v. Aurora Loan Servs.*, 636 F. App'x 115, 119 (3d Cir. 2015) (under analogous Pennsylvania UCC, "[Defendant] was the holder of the indorsed-in-blank note, and thus was entitled to enforce it in foreclosure proceedings even if there were defects in the chain of assignment."); *HSBC USA, N.A. v. Dennis*, 2017 N.J. Super. Unpub. LEXIS 342, 2017 WL 541463 at *5 (App. Div. Feb. 9, 2017) (acknowledging lower court's finding that note was indorsed in blank and finding that defendant became "the holder of the instrument" upon assignment of the mortgage and transfer of possession of the original note); *cf. Wells Fargo Bank, N.A. v. Vesprey*, No. A-1863-14T4, 2016 N.J. Super. Unpub. LEXIS 2495, 2016 WL 6833199 at *2 & n.3 (App. Div. Nov. 21, 2016) ("[T]o have standing, a foreclosing plaintiff either must have possession of the promissory note or an assignment of the mortgage that predated the original complaint." (citing *Mitchell*, 422 N.J. Super. at 216) (also noting that note was indorsed in blank)).

On these facts, then, Kearny is entitled to enforce the mortgage because it possesses (and possessed) the original note. Kearny's evidence, which Plaintiffs do not dispute, shows that Plaintiffs defaulted on the note in July 2011 and refused to pay taxes or insurance premiums after that point. Furthermore, Plaintiffs have not shown that Defendants committed an unfair debt-collection practice that would justify Plaintiffs' recalcitrance.

Plaintiffs' theory on the FDCPA front appears to be that since the note and mortgage were incorrectly assigned in the past, Kearny is not now entitled to foreclose on the property. These contentions are meritless, however, and

Kearny *is* entitled to foreclose on the property. Kearny's undisputed evidence demonstrates that, although the mortgage was mis-assigned three times during its life (*See* Section I.C, *supra.*), those errors were cured. Through two corrective assignments, the last recorded on July 19, 2013, Kearny was properly vested with its possession. (*See* Section I.D, *supra.*) No foreclosure proceeding was initiated by Kearny prior to that date. After that date, as the noteholder, Kearny was entitled to initiate foreclosure proceedings—subject, of course, to certain procedural safeguards intended to protect Plaintiffs' interests. Among these safeguards is N.J. Stat. Ann. § 2A:50-56(b), which requires a mortgagor to notify the mortgagee in advance of the foreclosure filing. Kearny did so twice.

Plaintiffs claim that Kearny acted improperly when it attempted to foreclose upon the property, but this claim is unsupported and has been judicially rejected several times. N.J. Stat. Ann. § 2A:50-56(b) requires the foreclosing party to send an NOI prior to the foreclosure complaint. Kearny issued two such NOIs—in January 2016 and July 2018. Those NOIs informed Plaintiffs that they were indebted to Kearny pursuant to the note.

Plaintiffs now mischaracterize the substance of Kearny's notice. Plaintiffs insist that it implies that Plaintiffs gave Kearny the note directly, as opposed to Kearny's having received it by assignment. Kearny properly notified Plaintiffs that the note had been assigned to it and that it intended to enforce its rights under the note.

The evidence on that point is uncontroverted. Moreover, this Court and the New Jersey Superior Court have both found that Kearny followed the procedural requirements that exist to protect homeowners. Plaintiffs' continued disagreement with these earlier court decisions does not now create an issue of material fact. The claim is **DISMISSED**.

## 2. Count Three (Robbery, Conversion, and Unjust Enrichment)

### i. Conversion

Conversion under New Jersey law is essentially "the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *Peloro v. United States*, 488 F.3d 163, 173–74 (3d Cir. 2007) (quoting *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990)). It breaks down to three essential elements: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D.N.J. 2013) (citing *78th Infantry Div., World War II Living History Ass'n v. Oprendek*, No. 11-165, 2011 U.S. Dist. LEXIS 140014 at *15–16 (D.N.J. Aug. 4, 2011)). Conversion is an intentional tort" in that "the defendant must have intended to exercise a dominion or control over the goods which is in fact inconsistent with plaintiffs' rights. The intent requirement, however, is lower than that for fraud; the defendant need not "knowingly or intentionally act wrongfully for a conversion to occur." *Chi. Title Ins. v. Ellis*, 409 N.J. Super. 444, 454 (App. Div. 2009) (quoting *Laplace v. Briere*, 404 N.J. Super. 585, 595, *certif. denied*, 200 N.J. 506 (2009). The defendant need not intend to harm the proper owner of the property or even know that the property belonged to that other person. *Id.* at 456.

The tort of conversion has evolved to apply to money and other financial instruments, so long as the plaintiff possessed an actual interest in the property and it is capable of being misused in a way that would deprive the plaintiff of its benefit. *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 432 (App. Div. 2011); *see also Chi. Title Ins.*, 409 N.J. Super. at 456 (discussing conversion in the context of money fraudulently obtained in connection with mortgages). It is essential that any money said to be converted have belonged to the injured party; an action for conversion will not lie for a mere debt. *Bondi*, 423 N.J. Super. at 432 (quoting *Advanced Enter. Recycling, Inc. v. Bercaw*, 376

N.J. Super. 153, 161 (App. Div. 2005)). Where there is no present obligation to return the money, but only a debtor-creditor relationship, a claim of conversion will not lie. Id. Additionally, the converted funds must be identifiable, and the injured party must establish that the tortfeasor exercised dominion over the money and repudiated the superior rights of the owner. *Id.*

Plaintiffs have not shown a genuine issue of material fact as it relates to their conversion claim. Plaintiffs have not produced any evidence that Kearny exercised improper dominion or control over their property. In fact, it is not clear what property they allege that Kearny converted—*i.e.*, the house on Forest Avenue, the note and mortgage pertaining to it, or some sum of money.

To the extent that the claim concerns the house, it is baseless because Kearny has not taken or exercised control over the property. In fact, Plaintiffs continue to live in house, almost nine years after having defaulted. Insofar as Plaintiffs' conversion claim concerns the note and mortgage, that claim is also without merit because Plaintiffs have no property rights to the note and mortgage.[8] Those rights belong to the owner of the note and mortgage, and Kearny has produced sufficient chain-of-title evidence to prove that it is that owner. Finally, there is no evidence that Kearny possesses any identifiable funds belonging to the Plaintiffs.

Accordingly, there is no issue of fact as to Plaintiffs' conversion claim, and summary judgment is granted to defendants.

### ii. Unjust Enrichment

Under New Jersey law, to state a claim for unjust enrichment, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it." *Snyder*, 792 F. Supp. 2d at 723–24. Defendants argue that summary judgment is now appropriate "because Plaintiffs have an adequate remedy at law under both contractual (warranty) and statutory

---

[8] Obviously, the note and mortgage confer rights on the Plaintiffs, but Plaintiffs do not have a possessory interest in the note or mortgage itself.

15

(consumer protection) theories." *Id.* (citing *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 983–84 (E.D. Cal. 2018); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007); *Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL 1372308 at *16 (D.N.J. Mar. 31, 2010); *Nossen v. Hoy*, 750 F. Sup. 740, 744 (E.D. Va. 1990). "New Jersey law appears to preclude *recovery* . . . where, as here, there is a legally subsisting express agreement, no rescission is sought and no contention that the express contract is void or did not exist." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982) (emphasis added) (citing *C. B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co.*, 14 N.J. 146, 162–63 (1953); *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280–81 (1951)).

Plaintiffs have failed to show that Defendants unjustly benefitted at their expense. Curiously, they do not allege that they were not credited for the mortgage payments they did make (a claim, which if alleged, would be proven false by Defendants' evidence). Instead, Plaintiffs have remained in possession of the property, while Defendants, to protect their position, have paid the tax and insurance expenses. Defendants have produced ample evidence of this. Plaintiffs, on the other hand, have not supported their contrary claim. That claim now fails because there is no question that Defendants were not unjustly enriched.

### iii. Robbery

Finally, under N.J. Stat. Ann. § 2C: 15-1, a person is guilty of robbery if—during the course of committing a theft—he or she inflicts bodily injury, uses force upon another, commits a first- or second-degree crime, or threatens another person with the purpose of putting him or in fear of immediate bodily harm.

Robbery is a criminal act; there is no private cause of action for robbery. Moreover, there are no facts that demonstrate that Kearny or its agents inflicted bodily injury, used force, committed a criminal act, or threatened any other person.

Plaintiffs have not shown a genuine issue of material fact in connection with their claims of conversion, unjust enrichment, and robbery. Accordingly Count Three is **DISMISSED**.

### 3. Count Four (Declaratory Judgment Act)

Count Four is brought under the Declaratory Judgment Act. That Act provides that, in "a case of actual controversy within its jurisdiction," a federal court may issue declaratory relief regarding the rights or legal relations of the parties. 28 U.S.C. § 2201. The statute only "enlarge[s] the range of remedies available in the federal courts [and does] not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). The Third Circuit has held unequivocally that the Declaratory Judgment Act does not provide a standalone basis for federal subject-matter jurisdiction. *Allen v. DeBello*, 861 F.3d 433, 444 n.57 (3d Cir. 2017) ("The Declaratory Judgment Act does not . . . provide an independent basis for subject-matter jurisdiction; it merely defines a remedy.") (collecting cases). To state it differently, the Declaratory Judgment Act is not itself an independent cause of action sufficient to invoke the court's federal-question jurisdiction; the availability of relief under the statute "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

Plaintiffs have not successfully invoked this Court's jurisdiction, because their they have not produced evidence to create a genuine issue of material fact on their federal claims. *See* discussion of Counts One and Two, pp. 9–14, *supra*.[9] Count Three contains state-law claims over which this Court—absent a basis for supplemental jurisdiction—has no adjudicatory authority. Because the declaratory judgment statute, 28 U.S.C. § 2201, is a procedural mechanism only and not an independent source of jurisdiction, *Skelly Oil*, 339 U.S. at 671–72 (1950), Count Four is **DISMISSED**.

---

9   Plaintiffs have also not alleged diversity jurisdiction. It appears that both Plaintiffs and Kearny are citizens of New Jersey (Compl. ¶ 4-6, 9), and that complete diversity is therefore lacking. See 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).

## III. CONCLUSION

For the reasons set forth above, the motion for summary judgment (DE 24) is **GRANTED**. A separate order will issue.

Dated: January 30, 2020

Hon. Kevin McNulty
**United States District Judge**